## Oyster *versus* Longnecker.

1. The judge trying a cause should not withdraw the facts from the consideration of the jury, or induce the jury to infer that they are not at liberty to pass upon disputed facts ; but he may express an opinion as to the tendency of the facts in evidence ; and an erroneous opinion concerning facts not withdrawn from the jury, is no ground for reversal.

2. Usury is not committed by payment of a premium *less* in amount than the legal interest. The offence consists in taking more than six per cent. on the loan, and till more has been taken the penalty is not incurred.

3. A return to the lender of part of the sum on which interest is reserved, reduces the contract essentially to a loan of *the residue*. The money returned is not a premium, but a discount. Therefore, if $700 were paid to the borrower, and he immediately handed back to the lender $35, and eventually received interest on $700, the offence of usury became complete *on the actual receipt of the interest;* and every fresh taking of interest on the $700 was a fresh consummation of the same offence.

ERROR to the Common Pleas of *Cumberland county.*

This was a *qui tam* action of debt, by *Jacob* Longnecker, who sued as well for himself as for the Commonwealth of Pennsylvania, against Oyster, brought to April term 1850, under the act of 2d March 1723. The act is as follows :—

SEC. 1. No person shall directly or indirectly, for any bonds or contracts to be made after the publication of this act, take for the loan or use of money or any other commodities, above the value of six pounds for the forbearance of one hundred pounds or the value thereof, for one year, and so proportionably for a greater or lesser sum.

SEC. 2. If any person or persons whatsoever do or shall receive or take more than six pounds per cent. per annum on any such bond or contract as aforesaid, upon conviction thereof the person or persons so offending shall forfeit the money and other things lent, one-half thereof to the governor, for the support of government, and the other half to the person who shall sue for the same, by action of debt, bill, plaint, or information, in any court of record within this province, wherein no essoin, protection, or wager of law, or any more than one imparlance shall be allowed.

The 6th section of the act of 26th March 1785 provides that all actions, &c. which shall be brought for any forfeiture upon any penal act of Assembly made or to be made, the benefit and suit whereof is or shall be by the said act limited to the commonwealth, and to any person or persons that shall prosecute in that behalf, shall be brought by any person or persons that may lawfully sue for the same, within one year next after the offence was committed; and in default of such pursuit, then the same shall be brought for the commonwealth any time within one year after that year ended, &c.

x 2

[Oyster *v.* Longnecker.]

It was alleged, on part of the plaintiff below, that Longnecker borrowed from Oyster, on the 27th April 1847, $665, and that he gave to Oyster an obligation dated *twelfth* day of April 1847, for $700, which was on 20th March 1850 satisfied in full.

On the part of the plaintiff, was given in evidence No. 314, January term 1847, a judgt. in favor of Oyster *v.* Isaac Longnecker. Real debt $700, by amicable action, dated 12th April 1847, with interest.

20th March 1850, acknowledgment of satisfaction in full.

Isaac Longnecker affirmed on *voir dire :*—I have no interest in this suit. I never asked my son for a cent. I did not employ counsel. I did not instruct counsel to bring the suit..

Sworn in chief:—(Paper of the 12th April 1847 shown the witness.) I told Oyster I was on the hunt of money, and heard he had some to put out; he told me he had; he asked me how much I wanted, and I told him $644. I did not get the money that day—when I came down again, he told me he could do better with his money than take simple interest, and that I must give him a premium of five per cent. I told him that was a hard case. He said if I did not choose to give it, I could not have it. I did not get the money that day. I went down again to give him a bond for the money; he then told me he had a little business at Carlisle; he would ride up with me. Then he came up, and in the office he gave me $665, and I gave him a judgment for $700. That judgment remained not quite three years, and we settled it on the 20th March 1850. I paid the whole, principal and interest, 20th March 1850; on that day I paid him, I think it was $824.

Cross-examined:—Oyster paid me $665, and not a cent more—he never did pay me $700. Nothing said about a settlement between him and me for straw. I do not know that I applied to anybody but him for the money. I was not at Squire Wills's that spring for the money, nor at Bretz's. There never was any agreement that I should pay Oyster for coming to Carlisle. The plaintiff, Jacob Longnecker, is my son. He lives with me on my farm. The stock is mine—he is in my debt for bail-money paid by me for him.

Jacob Bretz, affirmed.—I was in the prothonotary's office when the judgment was paid. Mr. Longnecker wanted Oyster to drop $35, which he had taken off him; Oyster was not agreed to it. Oyster said that he had told Longnecker the conditions on which he would give him the money, and that he had agreed to take it on those terms. Mr. Longnecker said that he was pushed for the money, and had been ill used and could not do without it. Oyster was not agreed to forgive him the $35.

Cross-examined:—Mr. Oyster did not deny at the time that he had taken the bonus. I heard nothing about Mr. Oyster saying that he had given him the money to compensate him for coming up to Carlisle.

[Oyster v. Longnecker.]

The following testimony was given on part of the defendant:—

Wm. M. Beetem, Esq., sworn:—This amicable action is in my hand-writing. The parties came into the office, and Mr. Oyster said he was about loaning to Longnecker $700, to pay a debt he owed for about that amount. Mr. Oyster requested me to draw the amicable action; I did so, and Mr. Oyster paid him down the $700. I counted the money—it was first counted by Oyster and handed to me; I counted it and handed it to Mr. Longnecker, saying it was right. After the amicable action was signed, and I had passed the money to Mr. Longnecker, they both moved to the end of the desk and had some conversation, which I think I did not hear. I saw money passing between them then at the end of the desk, and I think it was the opposite end of the desk. The notes were all large bills. Mr. Oyster did come up, I think twice, to ask me if there were any liens against Longnecker; I examined the docket, and referred him to a judgment in favor of Bretz.

Cross-examined:—A great deal of business done in the office in the spring of 1847.

On the part of defendant, points were submitted as follow:—

1. If the jury believe that the agreement between Mr. Oyster and Mr. Longnecker was that he (Oyster) was to loan to Longnecker $665, for which he was to give him an obligation for $700, and that in fact Mr. Oyster did, upon the execution of the obligation by Longneker, 12th April 1847, actually gave him $700 in money, and that Longnecker then handed him (Oyster) back the bonus of $35 of the money, the offence of usury, if any was committed, was then consummated, and the statute which limits the action to two years then began to run, and the action now trying, which was brought 30th March 1850, is barred by that statute.

2. If the jury believe that Oyster paid to Longnecker $700, and that Longnecker executed an amicable judgment for that amount and received the money, and subsequently paid to Oyster any amount as a bonus for the accommodation, then, if any offence was committed, the offence was complete on 12th April 1847, and the plea of defendant is a bar to the recovery in this case.

WATTS, President, charged as follows:—The facts of this case are so clearly proved as to be beyond any reasonable doubt. Indeed, it does not seem to be seriously argued that Mr. Longnecker did receive more than $665 from Mr. Oyster; but the counsel for the defendant has requested the court to charge the jury that "if you believe that the agreement between Mr. Oyster and Mr. Longnecker was that he (Oyster) was to loan Longnecker $665, for which he was to give him an obligation for $700, and that in fact Mr. Oyster did, upon the execution of the obligation by Longnecker, 12th April 1847, actually give him $700 in money, and that Longnecker then handed him (Oyster) back the bonus of $35 of the money, the offence of usury, if any was committed, was

[Oyster *v.* Longnecker.]

then consummated, and the statute which limits the action to two years then began to run, and the action now trying, which was brought 30th March 1850, is barred by the statute." In answer to which, we instruct you that the plaintiff's cause of action is not barred. In his declaration, he sets out that on the 20th of March 1850, the defendant received $158.43 for the forbearance of $665 for the time Mr. Longnecker had the use of the money—which, by a calculation, you will find to be the interest upon the entire principal of $700, and the bonus of $35 added, *and we instruct you that the device made use of, paying over the* $35 and immediately paying it back, is a mere fraud upon the statute, and affords the person practising it no shield from the effect of its penalty. If you believe the facts as proved, the case is as plain as facts and law can make it. The plaintiff's claim is $665. *Your verdict can make it no more, nor can you make it less.* If the plaintiff is entitled to recover, that is the amount.

The charge was excepted to by defendant's counsel.

The second point submitted, we think does not in any thing but phraseology differ from the one put and answered—but we answer it as we answered the first.

Excepted to.

Verdict was rendered for the plaintiff.

It was assigned for error :

1. The court erred in withdrawing from the consideration of the jury, the question of fact, whether or not any offence had been committed.

2. The court erred in charging the jury that the facts testified to by William M. Beetem were a fraud perpetrated on the statute, without there being any testimony in the cause showing fraud.

3. In charging the jury in the negative on defendant's second point.

*Todd,* for plaintiff in error.—The court assumed that $35 was paid back. There was no evidence of it : the judge should not have charged peremptorily as to it. Nothing should appear in the charge from which the jury might infer that they were precluded from considering the facts : 4 *Ser. & R.* 329 ; 4 *Rawle* 356 ; 3 *Pa. Rep.* 370 ; 2 *Ser. & R.* 415 ; 1 *W. & Ser.* 68.

As to 2d point :—The court instructed the jury that the payment of the $700 was a device and a fraud, when there was no evidence of fraud, or that there was any money handed back as a bonus. Longnecker explicitly denied any such state of facts as testified to by Beetem, who swore as to the payment of the $700, and said nothing nor knew any thing about money being paid back as a bonus. The court should have left the conflict in the testimony to the jury, to determine for themselves which of these wit-

[Oyster *v.* Longnecker.]

nesses told the truth, and whether or not any offence was committed.

As to 3d point:—There can be but one penalty. There must be a usurious contract at the time of the loan, and a usurious taking in pursuance of it: 4 *W. & Ser.* 453.

Hence the court should have instructed the jury that if they believed the testimony of Beetem, rather than that of Isaac Longnecker, there was no evidence of a usurious contract, and, without the finding of such a contract, the plaintiff was not entitled to recover.

Under the testimony, the court should have submitted to the jury the question whether any money had been paid on a usurious contract, or voluntarily after the contract of loan was consummated; and if in the latter mode, then the plaintiff could not recover.

*Biddle,* for defendant in error.—The opinion of a judge concerning facts is not the subject of a writ of error: 3 *Bin.* 80; 3 *Ser. & R.* 500. Nor the expression of the opinion of a judge as to the weight and credibility of the evidence: 10 *Barr* 296; unless it distinctly appear that the jury were led to suppose that they were precluded from judging of the facts.

It is contended that the court erred in charging the jury that the facts testified to by William M. Beetem were a fraud perpetrated on the statute without there being any testimony in the cause showing fraud. It will be perceived by a reference to the charge of the court that this is a mistake: what the judge said is in substance, that assuming the facts in the points to be true, the statute limits would not be a bar, and he added, "that the device made use of, paying over the $35 and immediately paying it back, is a mere fraud upon the statute, and affords the person practising it no protection." The rule as to this is well stated in *Comyn on Usury* 117: "It signifies not in what shape the profit on the money lent is to accrue: it is sufficient that such profit should exceed the legal rate, in order to bring the transaction within the statute." And as to the statute of limitations, the very case cited on the other side, Lamb v. Lindsey, 4 *W. & Ser.* 449, decides the point. It was there held by the court that "under the act of 2d of March 1723, the offence of taking usurious interest is committed by every successive receipt of such interest, and under the 6th section of the act of 26th of March 1785, a suit to recover the penalty may be brought within a year after the last successive receipt of such interest."

GIBSON, C.J.—It is settled that usury is not committed by payment of a premium less in amount than the legal interest. The offence consists by the statute, in taking more than six per cent. on the loan; and till more has been taken, the penalty is not incurred. Lamb *v.*

[Oyster *v.* Longnecker.]

Lindsey, 4 *W. &. Ser.* 449 ; Fisher *v.* Beasly, 1 *Doug.* 235 ; Wade *v.* Wilson, 1 *East* 195, and Scurry *v.* Freeman, 2 *Bos. & Pul.* 381, are sufficient for the principle.   The only cases that might seem to collide with them, are Musgrove *v.* Gibbs, 1 *Dal.* 216, and Kirkpatrick *v.* Houston, 4 *W. & Ser.* 115, which ruled that any taking of interest, however small, on a usurious contract, is a completion of the offence.   A distinction between interest and a bonus may seem to be a flimsy one ; but it is not.   A return of part of the sum on which interest is reserved, reduces the contract essentially to a loan of the residue.   The formal delivery of the whole with one hand, and the retrenchment of a part of it with the other, like the formal delivery of a chattel returned at the execution of a bill of sale of it, is, in either case, simply a transparent artifice to elude the statute.   The money returned, unlike the silk gown sometimes exacted by a wife for joining in a conveyance, is not a premium, but a discount ; and the detention of part of a bank loan, as payment of interest in advance, is legalized only by inveterate custom. If there was such a detention in this case, the contract for the nominal sum was usurious, but the offence was not committed till something had been received on it.   In this view of the subject, it would seem to be indifferent whether the sum detained were greater than the amount of the interest or not : payment of interest on the usurious loan would still be necessary.   But the point is immaterial, as the whole interest was taken within the period of limitation ; for it was ruled in Lamb *v.* Lindsey, and Scurry *v.* Freeman, the latter of which is precisely like the case we have to deal with, that every fresh taking is a fresh consummation of the same offence.

Judgment affirmed.

COULTER, J., objected to the manner in which the evidence as to the receipt of usury had been submitted to the jury.